IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA  *

  v.          *

JAMAR HOLT     *   Case No.: 8:13-cr-00204

  Defendant     *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF THE IDENTITY OF ALRAHMAN SHARIF ALLEN'S UNIDENTIFIED SUPPLIER AND INCORPORATED MEMORANDUM OF LAW

Defendant, Jamar Holt, by and through undersigned counsel, pursuant to the Federal Rules of Criminal Procedure, hereby moves this Court to Compel Disclosure of the Identity of Alrahman Sharif Allen's Unidentified Supplier. In support of this Motion, Mr. Holt submits the following incorporated Memorandum.

### FACTUAL BACKGROUND

On or about May 8, 2013, Mr. Holt was indicted by the Grand Jury for the District of Maryland with conspiracy to distribute and possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine and 280 grams or more of a mixture or substance containing a detectable amount of cocaine base.[1]  *See* Doc. 50 (Indictment).

In his Affidavit in Support of Application to Continue Interceptions of Wire Communications (hereinafter "April 9 Affidavit"), Officer Mark D. Howard (hereinafter "Off.

---

[1] This indictment has been superseded by the Third Superseding Indictment where Mr. Holt has been charged with, *inter alia*, conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine and additional charges. *See* Doc. 108 & Doc. 122 (Second & Third Superseding Indictments, respectively).

Howard") identified FNU LNU, "First Name Unknown, Last Name Unknown," as "possibly a source for cocaine" and a "likely source of supply" to Alrahman Sharif Allen (hereinafter "Mr. Allen"). *See* Ex. 6 (April 9 Affidavit at ¶¶ 6, 17, 21, 43, 92, 107).[2]  In his Affidavit, Off. Howard also noted that FNU LNU is "yet to be fully identified." *See id.* at ¶17. However, Off. Howard had more than just a suspicion that FNU LNU was a "likely source of supply." To the contrary, Off. Howard intercepted at least two telephone calls where he documented specific conversations between FNU LNU and Mr. Allen where FNU LNU asked Mr. Allen if he had "pick[ed] up the girl already," *see id.* at ¶ 20, and where Mr. Allen asked FNU LNU "for something" to sell. *Id.* at ¶ 42. Based on these conversations and his training and experience, Off. Howard believed that FNU LNU was Mr. Allen's "likely source of supply", *id.* at ¶ 107,  and that that "[Mr.] Allen is likely conspiring with . . .FNU LNU #1 and others yet to be identified, to obtain kilogram quantities of cocaine and heroin." *See id.* at ¶ 92.  It is the government that has identified FNU LNU as the "likely source of supply" of "drugs" to Mr. Allen, at the same time Off. Howard was stating based on his experience and expertise that Mr. Holt was merely a purchaser of cocaine/heroin from Mr. Allen. *See id.* at ¶ 58 (advising the court under penalty of perjury that based on his *"training and experience"*, Mr. Holt was using **coded language** to tell Mr. Allen that he was bringing *"payment* **for drugs** *previously provided to HOLT by ALLEN on consignment"*) (emphasis added)). That the government has now changed its theory and alleged that Mr. Holt was supplying cocaine to Mr. Allen does not make the identity and disclosure of FNU LNU irrelevant and/or non-discoverable. Additionally, Mr. Holt has reason to believe that the government now knows the identity of FNU LNU. First, Mr. Allen is now cooperating with the government and has certainly been debriefed by the government.  Second, when Mr. Holt

---

[2] Exhibit 6 referenced herein is attached to Doc. 100 as Exhibit E.

requested disclosure of the identity of FNU LNU the government did not deny knowledge of his identity but instead alleged that his identity was not discoverable under Federal Rules of Criminal Procedure 16 and 26.2. *See infra* Ex. 2.

Based on the government's assertions about FNU LNU, on November 14, 2013, undersigned counsel timely requested the identity of "FNU LNU" from the government. *See* Ex. 1 (Letter to AUSA Bressack, dated November 14, 2013). Four days later, Ms. Bressack, as noted, refused to produce this information, because she did not believe that the "material is discoverable under Federal Rules of Criminal Procedure 16 and 26.2." *See* Ex. 2 (AUSA Bressack's Letter, dated November 18, 2013). On November 19, 2013, undersigned counsel again requested the identity of "FNU LNU" and requested that the government explain why it did not believe the material was discoverable under Rule 16 and 26.2. *See* Ex. 3 (Letter to AUSA Bressack, dated November 19, 2013). Again, the government, without explanation or a basis, refused stating that this information is not discoverable. *See* Ex. 4 (AUSA Bressack's Letter, dated November 21, 2013). Because the government refuses to disclose this material evidence, Mr. Holt files this Motion to Compel Disclosure of the Identity of Alrahman Sharif Allen's Unidentified Supplier.

## INTRODUCTION

Clearly established federal law mandates disclosure before trial of evidence that is favorable to the accused. *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999). Where the evidence is material to the guilt or to punishment of defendant, disclosure is required, irrespective of good faith or bad faith on behalf of the government. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Giglio v. United States*, 405 U.S. 150 (1972); *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). If the government does not disclose evidence that is favorable to the accused, then a miscarriage of justice will likely occur. *See Spicer* 194 F.3d at 555. The three

"essential components" of *Brady* require that (1) the evidence, at issue, must be favorable to the defendant, whether directly exculpatory or of impeachment value; that (2) it must have been suppressed by the government, either willfully or inadvertently; and (3) the evidence must be material. *Id.* Evidence is "material" where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* Also, when making a materiality finding, courts should consider the withheld evidence for its cumulative effect rather than judging each withheld item separately. *See, e.g., Kyles*, 514 U.S. at 435-37. Finally, this evidence must be provided to defendant before it is too late for defendant to make use of any benefits of the evidence. *See United States v. Ziperstein*, 601 F.2d 281, 291 (7th Cir. 1979). It logically follows, therefore, that the *Brady* material must be disclosed in time for effective utilization at trial. *See United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir.), *cert. denied*, 474 U.S. 1005 (1985). A late disclosure of information that precludes the defendant from using it effectively in his defense renders the disclosure meaningless and violates due process. *See id.*

Moreover, the Federal Rules of Criminal Procedure (hereinafter "Rules") mandate the disclosure of documents or objects pertaining to FNU LNU's identity that the government has in its possession, custody, or control that is material to the defense. Here, Mr. Holt has reason to believe that the government is in possession of documents and objects that relate to FNU LNU's identity and there is no information available that will enable Mr. Holt to independently determine his identity. FNU LNU's identity is material because Mr. Holt has plead not guilty and denies that he supplied drugs to Mr. Allen and has reason to believe, as the government once

4

stated, that FNU LNU was instead the supplier of drugs to Mr. Allen. Therefore, FNU LNU's

identity must be disclosed, both under the *Brady* doctrine and under the Rules.

## ARGUMENT

I.    **The Disclosure of Allen's Unidentified Supplier Is Required Under *Brady*, and Without Knowing His Identity Immediately, Mr. Holt Cannot Effectively Prepare His Defense.**

      A.    Disclosure is Required Where the Withheld Evidence is Favorable, the Government Is Withholding the Information, and the Information Is Material to the Defense.

The Fourth Circuit has held that information that supports an alternate theory of the crime

mandates disclosure because it undermines confidence in the outcome of the trial. *See Monroe v.

Angelone*, 323 F.3d 286, 310-13 (4th Cir. 2003) (nondisclosure of material, favorable evidence

warranted federal habeas relief); *Wolfe v. Clarke*, 819 F. Supp. 2d 538, 549 (E.D. Va. 2011)

(same and vacating conviction).  In both *Monroe* and *Wolfe*, the defendants were accused and

convicted, *inter alia,* of first-degree murder. *Monroe*, 323 F.3d at 291; *Wolfe*, 819 F. Supp. 2d at

544. In both cases, the government did not disclose information that would have presented an

alternate theory, that is, that *someone else* committed the crime or that the victim committed

suicide. *Monroe*, 323 F.3d at 299-307; *Wolfe*, 819 F. Supp. 2d at 562-63.

In *Wolfe*, the defendant in Northern Virginia was a drug dealer of high-grade marijuana,

which the victim supplied to him. *Id.* at 549. The defendant was a close friend with another drug

dealer, Owen Barber. *Id.* The government contended, and tried the case, under the theory that the

defendant ordered Barber to rob and kill the victim in exchange for a half-pound of high-grade

marijuana, four pounds of lower-grade marijuana, forgiveness of a $3,000.00 debt, and

$10,000.00 in cash. *Id.* at 550. To support this theory, the government introduced phone records

that indicated that the defendant and Barber were in contact around the time of the murder. *Id.*

The defendant argued that he had nothing to do with the murder and that the phone communications at the time were social calls or were related to the drug transactions. *Id.* As a result of these two competing theories, motive was a critical factor in the government's case, because the government's position was that Barber had no reason to kill the victim and would not have done so absent the defendant's direction and inducement. *Id.* Further, the government argued that the defendant, on the other hand, had a motive to kill the victim because he owed the victim $60,000.00 and did not like paying debts; the defendant wanted to reduce the number of high-end marijuana dealers; and the victim was upset with the defendant because the defendant was not paying down his debt. *Id.* The government relied on the testimony of Barber and four other individuals. *Id.*   Because the other four individuals' testimonies corroborated the defendant's contention that he had no involvement in the murder, the government relied heavily on Barber's testimony that he acted at the defendant's direction. *Id.* The government also relied heavily on circumstantial evidence such as phone records and private conversations between the defendant and Barber and facts indicating that the defendant had given money to a person whose car was used for the murder and to Barber's girlfriend during the aftermath of the murder. *Id.* at 551. While the defendant admitted to the conversations and the circumstantial evidence, he argued that none of these acts had anything to do with the murder. *Id.*  The defendant was convicted of capital murder in Prince William County, use of a firearm in commission of a felony, and conspiracy to distribute marijuana. *Id.* at 544. He was sentenced to death on the murder-for-hire charge and to thirty years and three years, respectively, on the other two charges. *Id.*

After a series of appeals to state and federal courts, the United States District Court for the Eastern Division of Virginia conducted an evidentiary hearing on the defendant's (now

6

Petitioner) *Brady* and *Giglio* claims. After a hearing and full briefing by both sides, the court found that the prosecution had withheld material evidence, both exculpatory and impeachment, and granted habeas relief and vacated Petitioner's conviction and sentence. *Id.* at 574.

Specifically, the court found that the government had withheld the material information that Barber and the victim had a personal relationship, despite allegations that the two never knew each other. *Id.* at 551. There was also circumstantial evidence that Barber owed money to the victim, that the victim had a hit out on Barber, and that Barber and the victim's roommate were "tight." *Id.* at 552. There was also evidence that the victim and Barber had hung out and had done drugs together. *Id.* Additionally, there was evidence that the victim was an informant, that there were conflicts in his drug enterprise, and that there was a another car at the crime scene shortly after the murder *Id.* at 558. All of this information was favorable to the defense because it undermined the primary theory of the government's case that Barber had no motive to kill the victim and thus would not have done so absent Petitioner's direction. To the contrary, the withheld evidence bolstered the fact that Barber did indeed have a motive to kill the victim, and when combined with the circumstantial evidence, it undermined Barber's testimony that he never knew the victim and contradicted the government's primary theory as to lack of motive. *Id.* at 552. In essence, the withheld evidence supported an alternate theory to the case, namely, that *someone else* committed the crime alleged.

Although the crimes alleged in *Wolfe* are different, the principle remains the same: Mr. Holt contends *someone else* committed the crime with which Mr. Holt has been charged, the government has previously identified *someone else* other than Mr. Holt as committing the crime, and Mr. Holt has reason to believe the government is in possession of the identity of that person. *See* Doc. 50 (Indictment); Doc. 108 (Second Superseding Indictment); Doc. 122 (Third

Superseding Indictment). At bottom, Mr. Holt is contending that he has not supplied cocaine to Mr. Allen or anyone else and that Mr. Allen's supplier is someone else.  According to the government's allegations, the supply chain of cocaine allegedly operates as follows: Mr. Holt supplies Mr. Allen, Mr. Allen supplies Mr. Estep, and Mr. Estep supplies others. *See* Ex. 6 at ¶ 56; Ex. 7 (Affidavit in Supp. of Search and Seizure Warrant for Multiple Residences ¶ 20-22)[3]; Ex. 8 (Detention Hr'g Tr. at 5)[4]. Mr. Holt avers that the allegations are false and that he did not supply cocaine to Mr. Allen or anyone else. Moreover, the government has arguably conceded that *someone else* – specifically "FNU LNU #1" – supplied Mr. Allen and that Allen was "receiving large quantities of cocaine" from him. *See* Ex. 6 at ¶¶ 17, 21, 25, 92, 107. Mr. Holt has reason to believe that the government is willfully withholding the information of FNU LNU's identity in this case. *See* discussion *infra* Part II.B.; Ex. 2, 4.

The two remaining questions are whether the evidence is favorable and material to the defense. Mr. Holt contends that it is both.

FNU LNU #1 is, by the government's own admission, likely Mr. Allen's supplier, which undermines the government's position that Mr. Holt and Mr. Allen are involved in a conspiracy to distribute or possess cocaine. *See id.* This alternate source of supply for Mr. Allen provides an alternate theory of Allen's supplier and co-conspirator. This evidence is, obviously, favorable to the defense because it is inherently exculpatory to Mr. Holt.

The evidence is also material because there is a reasonable probability that the information will impact the result at trial. There is a reasonable probability that a jury, upon considering this evidence of a different supplier instead of Mr. Holt, will find that Mr. Allen did not receive cocaine from Mr. Holt but that Mr. Allen's exclusive supplier was FNU LNU. A jury

---

[3] Exhibit 7 referenced herein is attached to Doc. 100 as Exhibit G.

[4] Exhibit 8 referenced herein is attached to Doc. 100 as Exhibit O.

must find Mr. Holt guilty *beyond a reasonable doubt* for the crime with which he is charged – a "requirement that dates . . . from our early years as a Nation." *In re Winship*, 397 U.S. 358, 361 (1970). And a finding beyond a reasonable doubt requires that the jury have no reasonable doubt whatsoever in their verdict and an alternate supplier may undermine any confidence of such a finding. If this evidence could cause a jury not to find Mr. Holt guilty of the crime he is charged with beyond a reasonable doubt, then there is a reasonable probability that the outcome at trial will be different, which makes this information material under *Brady*. *See Wood*, 516 U.S. at 5.

### B. Mr. Holt Is Entitled to the Disclosure, and Immediate Disclosure of FNU LNU's Identity Is Necessary to Prevent a Due Process Violation.

Where "the exculpatory information . . . lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine. *United States v. Roane*, 378 F.3d 382, 402 (4th Cir. 2004). This is not the case here. The identity of FNU LNU is entirely unknown to Mr. Holt, and there is no other information that divulges characteristics unique to the identity of FNU LNU so that Mr. Holt can independently ascertain his identity. *See* Ex. 5 (Affidavit in Support of Application to Intercept Wire Communications (hereinafter "March 11 Affidavit"))[5] and Ex. 6. Therefore, Mr. Holt is entitled to the benefit of the *Brady* doctrine. *Roane*, 378 F.3d at 402.

Mr. Holt also argues that the government is withholding more than FNU LNU's identity. When viewed through the lens of the cumulative effect of such a withholding, or disclosure for that matter, FNU LNU's identity can have an enormous cumulative impact on Mr. Holt's theory or theories of defense. *See Wolfe*, 819 F. Supp. 2d at 546. From this information, Mr. Holt can explore several other theories and will need ample time to develop them and vet them based on the evidence he can garner by such disclosure. Once the identity of FNU LNU is disclosed, Mr.

---

[5] Exhibit 5 referenced herein is attached to Doc. 100 as Exhibit B.

Holt will need to gather all relevant information, review all relevant evidence that is implicated

by FNU LNU's identity, develop new defense theories, and strategize accordingly. Obviously,

this process takes time and cannot be accomplished immediately before or during trial.    Thus,

any further delay in disclosure of FNU LNU's identity will render the disclosure meaningless

because Mr. Holt will not have the time to prepare his defense and will contravene due process.

*See Ziperstein*, 601 F.2d 291.

Additionally, when the Supreme Court decided *Brady*, it set forth more than a bright line

rule. It eloquently reasoned:

> The principle of [a *Brady* disclosure] is . . . avoidance of an unfair
> trial to the accused. Society wins not only when the guilty are
> convicted but when criminal trials are fair; our system of the
> administration of justice suffers when any accused is treated
> unfairly. An inscription on the walls of the Department of Justice
> states the proposition candidly for the federal domain: 'The United
> States wins its point whenever justice is done its citizens in the
> courts.' A prosecution that withholds evidence on demand of an
> accused which, if made available, would tend to exculpate him or
> reduce the penalty helps shape a trial that bears heavily on the
> defendant. That casts the prosecutor in the role of an architect of a
> proceeding that does not comport with standards of justice, even
> though, as in the present case, his action is not 'the result of guile,'
> to use the words of the Court of Appeals.

*Brady*, 373 U.S. at 87-88. (citing *Brady v. State*, 226 Md. at 427 (1961) (internal citations

omitted).    In comporting with the spirit of fairness in *Brady* disclosures, at least one state

requires disclosure at the earliest opportunity to allow the defense enough time to investigate the

disclosure and present it at trial. *See People v. Arthur*, 175 Misc. 2d 742, 764 (N.Y. Sup. Ct.

1997) ("Trial courts in our state have long recognized that information which is clearly

exculpatory should be disclosed at the earliest possible opportunity in advance of trial, in order to

permit the defense sufficient time to investigate it and present it at trial"). Thus, under the

guidance of the spirit of the *Brady* doctrine, Mr. Holt requests disclosure of FNU LNU's immediately to adequately prepare his defense for trial.

    **II.**    **FNU LNU's Identity Is Discoverable Under the Federal Rules of Criminal Procedure Because the Plain Language of the Rules Require the Government to Produce Papers and Documents and Objects That Are Within Its Possession and That Are Material to Mr. Holt's Preparation.**

        A.  Mr. Holt Is Requesting Any and All Items Under Rule 16(E) that Relate to FNU LNU.

Rule 16 provides:

> (E) Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> **(i)** the item is material to preparing the defense[.]

Fed. R. Crim. P. 16(a)(1)(E)(i). Mr. Holt is requesting books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items that relate to FNU LNU. *See id.*; *see also* Ex. 3. Included in these documents, and papers, but not limited to, are any and all pleas, non-prosecution agreements, criminal records, and recorded statements, and any other tangible objects involving FNU LNU's crimes or involvement in the alleged conspiracy. Therefore, the documents and objects fall within the purview of Rule 16.

        B.  Mr. Holt Has Reason to Believe The Government Has Possession, Custody, and Control of FNU LNU's Identity.

Mr. Holt has reason to believe the government has possession of FNU LNU's identity in the form of a document or object. *See* Fed. R. Crim. P. 16(E). Knowledge of government agencies that work closely with the prosecutor is imputed to the prosecutor. *See, e.g.,*

11

*Youngblood v. W. Virginia*, 547 U.S. 867, 870 (2006) (holding that police officers are a part of the government and imputing knowledge).    In this case, what the United States Drug Enforcement Administration knows, or any other branch involved in the investigation, is imputed to the Department of Justice. *United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (imputing DOJ knowledge to the prosecutors with regard to Rule 16). In the April 9 Affidavit, the government identified FNU LNU as someone that supplies Allen with cocaine and states that his identity has "yet to be *fully* identified." *See* Ex. 6 at ¶ 17 (emphasis added).   The word "fully" in this instance is instructive because it indicates that the government, at the time, had some information about FNU LNU's identity and thus knew, at least partially, of his or her identity. *See id.* This information was available to the government, even minimally, eight months ago. In these eight months, the government has not ceased investigations in this matter. To the contrary, the superseding indictments reveal ongoing, continuing, and thorough investigation by the government into all matters. *See* Doc. 122 (Third Superseding Indictment). It is improbable, if not impossible, that the government, while continuing its investigation and amassing information over the past eight months including meeting with Mr. Allen, has yet to fully identify FNU LNU.

Not only does the continuing investigation over the course of eight months belie any contention that the government does not have the information as to FNU LNU's identity, the two letters sent by the government to counsel indicate that the government knows FNU LNU's identity but refuses to disclose this information because, according to the government, the "material is not discoverable." *See* Ex. 2, 4. If the government did not possess FNU LNU's full identity, it would have said as much in its responses to counsel's requests. However, to the contrary, the government makes no such contention. Instead, the government categorically

12

refuses to disclose the information, thus implying that it possesses, has custody, or is in control of documents and objects that pertain to FNU LNU's identity. Therefore, it is highly likely the government knows the identity of FNU LNU's identity and has possession and custody of the same.

### C. The Information is Material to Preparing Mr. Holt's Defense.

The information requested is material to preparing Mr. Holt's defense because it is exculpatory and material to the defense. *See* discussion *supra* Part I.A.

### CONCLUSION

For the reasons stated herein, FNU LNU's identity and all documents and objects pertaining thereto must be disclosed immediately.

Respectfully Submitted,

_____/s/_____
Kenneth W. Ravenell
Milin Chun
Murphy, Falcon & Murphy, P.A.
One South Street
23rd Floor
Baltimore, MD 21202
*Attorneys for Mr. Holt*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2014, the foregoing Motion to Compel the Identity of the Unidentified Supplier and Incorporated Memorandum of Law was served on all parties and their counsel via ECF.

/s/
Kenneth W. Ravenell